UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROBERT OCASIO, MICHAEL WEST,
JEREMIAH STROMAN, LEROY THOMAS,                    04 CIV 5229 (WCC) - ECF CASE
DEAN SMITH and ALEXANDER
STEWART,

                Plaintiffs,                    **COMPLAINT**

-vs-

                               **JURY TRIAL DEMANDED**

COUNTY OF ORANGE, SGTS. EDWARD
KISTNER, JAMES POTTER, DANIEL
PERSELL, COLEMAN ROTHMAND
DANIEL FIGUEROA, FRANK MAIORINO,
INVESTIGATOR ANTHONY WEED,
CAPTAIN RAUL RODRIGUEZ,
LT. ANTHONY MELE, OFFICERS
BRIAN FOSTER, DAVID JOHNSON,
ERIC RUHL, LOU PASTOR, KEVIN HALSEY,
MICHAEL PFLEGER, RICHARD HAMMER,
BENNY RIVERA and JOHN DOES
I through XX, sued in their individual
capacities,

                Defendants.
------------------------------------------------------------X

        **INTRODUCTION**

1.      Plaintiffs bring this civil rights action to redress the repeated use of excessive

force on November 5-6, 2003 at the Orange County Jail.  Pursuant to a custom

and practice by the County of Orange, the individual defendants beat and

otherwise subjected plaintiffs to excessive force without provocation, causing

them physical and emotional injuries.

**PARTIES**

2.      Robert Ocasio entered the Orange County Jail on September 27, 2002.  He is no

longer incarcerated.

3.      Michael West entered the Orange County Jail on October 1, 2002.  He is currently

incarcerated.

4.      Jeremiah Stroman entered the Orange County Jail on or about October 2, 2002.

He is currently in state custody.

5.      Leroy Thomas entered the Orange County Jail on August 10, 2002.  He is

currently in state custody.

6.      Dean Smith entered the Orange County Jail on June 7, 2002.  He is currently in

state custody.

7.       Alexander Stewart entered the Orange County Jail on April 1, 2002.  He is

currently in state custody.

8.      Defendant County of Orange is a municipality organized pursuant to the laws of

the State of New York.  It may sue and be sued.

9.      Each individually-named defendant, including defendants John Doe I through

XX, are corrections and superior officers employed by the County of Orange.

They are State actors for purposes of this litigation.  The true names of John Does

One through Twenty are presently unknown to plaintiffs.  Upon information and

belief, each of these individual corrections officers directly participated in or

observed and failed to intervene in an unjust beating of one or more plaintiffs as

further described herein.  Leave of court will be sought to amend this complaint to

2

include the true names of the John Does when that information becomes
available.  Each John Doe is sued in his individual capacity.

## JURISDICTION AND VENUE

10.   As plaintiffs plead the violation of their rights under the Fourth, Eighth and
Fourteenth Amendments to the United States Constitution, this Court has subject
matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(3) and (4) and 42
U.S.C. §§ 1983 and 1988.

11.   As the events giving rise to this case arose in Orange County, this case is venued
in the Southern District of New York.

## FACTUAL AVERMENTS

### Jeremiah Stroman

12.   On or about November 5, 2002, while Jeremiah Stroman was confined to Dorm
C-3, Officer  David Johnson directed the inmates watching television to keep the
laughter down to a minimum.

13.   Immediately after this directive, Officer Johnson told an inmate, Edward
McGuire, to lock into his cell.  After McGuire requested to speak with a sergeant,
Stroman asked McGuire why he had to lock in, prompting Officer Johnson to
order Stroman to lock in.  Pursuant to the rule that inmates must request to speak
with a sergeant rather than express disagreement to an officer, Stroman asked to
speak with a sergeant.

14.   Approximately 15 minutes later, Officer Foster and Sgt. Kistner entered the C-3
housing unit.  When Sgt. Kistner asked Officer Johnson which inmate refused to

lock in, Officer Johnson pointed to Stroman and McGuire and directed Officer
Foster to handcuff Stroman.  Now using pepper spray on Stroman, Officer Foster
twisted his arm and tightly applied the handcuffs to his wrists, causing substantial
pain.  Sgt. Kistner and Officer Foster pushed Stroman into the C-3 vestibule and
continued the pepper spraying.

15.     Once in the C-3 vestibule, Stroman was sprayed in the mouth, eyes and nose with
mace.  This caused Stroman to experience difficulty breathing due to a history of
asthma.  The macing was witnessed by many of the inmates in C-3, including
Thomas, Smith and Ocasio who were gathered around the sally-port entrance.
Some of these observing inmates were pounding on the glass walls and yelling at
the officers.

16.      Shortly thereafter, approximately 12-15 officers arrived.  Stroman was pushed to
the floor, shackled and repeatedly punched in the head.  Officer Ruhl kneed
Stroman in the left eye and he was kicked many times in the back.  While this
beating was occurring, other officers were trying to get the other C-3 inmates to
lock into their cells.

17.      Stroman was next lifted by the shackles and taken to an area of the housing unit
where inmates change into street clothing for court appearances.  He was
repeatedly punched and kicked.  The following officers participated in this
beating: Pastor, Ruhl, Steinard, Russell, and Sgt. Kistner.  Sgt. Potter and Sgt.
Figueroa watched the beating but did not direct anyone to stop.

18.     Capt. Rodriguez punched Stroman in his left eye 3-4 times.  Several officers stood

4

nearby, taunted Stroman and called him a "nigger."

19.    After he was taken to a cell in D-1, Officer Sarnecky took Stroman's jump suit,

underwear and T-shirt, which were covered in blood, and placed them in the

garbage.  Stroman was made to lie in his cell without clothing, blanket or any

covering.

20.    Later that evening at approximately 10 p.m., SERT officers in full riot gear

entered D-1.  They included Lt. Mele, Sgt. Weed, and four masked officers armed

with two riot shields, one shot-gun, and one tear gas launcher.  After handcuffing

Stroman through the flap in his cell door, Weed entered Stroman's cell and

punched him in the ribs and face several times.

21.    Stroman filed an internal grievance concerning the unconstitutional actions

described herein.

22.    Defendants Rodriquez, Kistner, Potter, Foster, Johnson, Ruhl, Pastor and Weed

all participated in or observed and failed to prevent the beating inflicted upon

Stroman.  The additional unnamed corrections officers, John Does I-XX , who

pepper-sprayed and beat Stroman are currently unknown to plaintiffs, but will be

identified when such information becomes available.


**Robert Ocasio**

23.    At approximately midnight on November 6, 2002, more than 15 corrections

officers entered the C-3 dorm.  As part of the SERT Team (Sheriff's Emergency

Response Team), the officers wore black combat fatigues, black knee-high

5

combat boots, black knee pads, and full-face motorcycle helmets. The face shields on the motorcycle helmets were mirrored on the outside so that plaintiffs could not determine the identity of the officers. One officer carried a riot shield. Many had rifles and tear gas equipment.

24.    The officers screamed orders at all inmates in the lower tier (cells 1-28) to face the wall, get on their knees and place their hands behind their backs.

25.    Thereafter, three officers at a time entered and ransacked each cell and threw commissary and personal items away.

26.    At approximately 1:15 a.m., the SERT Team left the dorm. When they left, they warned the inmates in C-3 that they would be back. They returned approximately one hour later screaming, "we're back assholes." They then started ransacking the upper tier (cells 29-56).

27.    Now, three officers entered plaintiff Ocasio's cell (#30), put his head down and handcuffed him. Then the officers took Ocasio out of his cell, down to the shower for a strip-search and then to the multi-purpose room, beating him in the stomach along the way.

28.    Once in the multi-purpose room, which contained the BOSS x-ray chair, one of the masked officers slowly and deliberately placed pepper spray in Ocasio's eyes and mouth with his gloved hand. Ocasio was then taken back to his cell.

29.    After Ocasio yelled out that "you're not going to get away with this," three officers entered his cell, handcuffed him and then beat Ocasio about the face and upper body. They also hit Ocasio with a riot shield and kept smashing his face

6

against the cell wall.  Eventually, the beating caused a cut above Ocasio's left eye

and he began to bleed profusely.  Officer Hammer then said, "this guy can't come

out like this," and washed some of the blood off Ocasio's face.  Lt. Mele then

came into the cell, looked at Ocasio's face and said he needed " a couple of

stitches."

30.    As a result of the unprovoked beatings inflicted on Ocasio, there was blood all

over his cell.  Ocasio suffered agonizing pain and then a brief period of

unconsciousness.

31.    At approximately 6:00 a.m. on November 6, 2002, corrections officers brought

Ocasio to Arden Hill Hospital in Goshen, New York where medical personnel

stitched a laceration to his face.

32.    Upon information and belief, defendants Mele, Persell, Rothmand, Figueroa,

Maiorino, Halsey, Pflegler and Hammer all participated in or observed and failed

to prevent the beating and macing inflicted upon Ocasio.  The additional unnamed

corrections officers, John Does I - XX, who pepper-sprayed and beat Ocasio are

currently unknown to plaintiffs, but will be identified when such information

becomes available.


**Leroy Thomas**

33.    In the evening of November 5, 2002, at approximately 9:30 p.m., some Sergeants

from the SERT Team entered Thomas's cell in C-3, cuffed his hands and walked

him to an office after hearing him complain about Stroman's beating.  Sgts.

Potter, Figueroa and Kistner brought Thomas out of his cell in handcuffs.  In the C-wing housing unit, Thomas was questioned by these officers and called racial epithets like "boy" and "nigger."

34.     Sgt. Potter then put on gloves and proceeded to beat Thomas.  Kistner also joined in the beating while Figueroa watched.  Thomas was beaten in the head and ear and his ear began bleeding and ringing.  Thomas was struck in the head approximately five more times before the officers returned him to his cell.  While they were taking him back to his cell, the officers told Thomas that "you're going back in your cell and you're going to shut the fuck up."

35.     When Thomas got back to his cell, he asked for a medical slip for his bleeding ear.  Thomas did not get the slip that night.

36.     Later that night, the SERT team came into C-3 and ransacked the cells on the lower tier.  They came back at about 2am and started on the upper tier cells. Thomas was in Cell 49. From his cell, Thomas witnessed the beating of Ocasio in Cell 30.  While the officers were ransacking other cells, one officer kept walking past Thomas' cell yelling, "you're next Leroy, you fucking piece of shit."

37.     Eventually they came to Thomas' cell, and he was punched in the head again by some SERT officers. The officers left the cell after trashing Thomas's belongings.

38.     The following day, Thomas was examined by the facility nurse, who said that his left ear appeared to be infected and arranged for him to meet with the facility doctor.  The doctor diagnosed a punctured eardrum and advised a consult with an ear, nose and throat specialist.

39.     The Hudson Valley Ear Nose and Throat P.C. in Middletown confirmed that Thomas had a punctured ear drum.

40.     Thomas did not formally file a jail grievance related to his beating.  Instead, he contacted class counsel for the OCJ inmates, Thornton, Bergstein & Ullrich, who were then involved in a PLRA termination motion concerning a 1977 federal consent order governing conditions of confinement at OCJ (<u>Merriweather v. Sherwood</u>, 77 CIV 3421 (CM)(MDF)).  Thomas signed an affidavit on December 17, 2002 detailing the incidents of his beating.  Thomas' affidavit was submitted to Orange County on December 19, 2002 in a motion for contempt of the Merriweather consent order.  His deposition was taken by Orange County in February 2003 and he testified before the Hon. Mark D. Fox, USMJ, on March 11, 2003 during the PLRA termination hearings.

41.     Defendants Figueroa, Potter and Kistner all participated in or observed and failed to prevent the beating inflicted upon Thomas.  The additional unnamed corrections officers, John Does I - XX, who beat Thomas are currently unknown to plaintiffs, but will be identified when such information becomes available.


**<u>Dean Smith, Alexander Stewart and Michael West</u>**

42.     On November 6, 2002 during the 2am SERT raid in C-3, several officers entered Smith's cell (#47) and told him to kneel on the bed and place his hands behind his back and face the wall.  They applied handcuffs so tight it created marks on Smith's right wrist.

43.     Without any provocation by Smith, one officer yelled out, "Don't resist."  Smith

replied, "I'm not resisting."   The officers next slammed Smith's head into the wall

and punched him.

44.     As Smith's hands were cuffed he tried maneuvering his body to protect himself.

When Smith turned towards them, one of the officers struck his forehead with his

riot shield and Smith began bleeding.

45.     The officers continued to punch Smith, causing him to collapse and pass out after

he was struck in the forehead.  Smith awoke when two SERT Team members

dragged him out of the cell.  Smith panicked and yelled out to the Sergeant,

"Sergeant, all I was doing was sleeping!"

46.     The officers next dragged Smith to the shower area and uncuffed him and ordered

him to remove his clothing.  After the strip-search Smith was handcuffed again

and the officers dragged him to the multi-purpose room where he was placed in

the BOSS chair.

47.     While Smith's hands remained cuffed behind his back, a SERT Team member

slowly and deliberately put mace in Smith's eyes with his fingers, causing

significant discomfort.

48.     When Smith squirmed from the pain the officers dragged him over to the sallyport

bubble and into an enclosed hallway, where they started punching him in his side

and called him "asshole," saying also that "this is our place."

49.     The officers beat Smith as they escorted him to the A-l unit.  After the officers

removed the handcuffs they again beat Smith and said, "Do you understand this is

our house?"

50.    That same night, officers entered West's cell in C-3 and told him to kneel on the

bed and face the window.  Handcuffs were placed on West with his hands behind

him and he was repeatedly struck about the legs, back, forehead and back of skull.

He was struck with an unknown weapon and the beating caused him to fall

forward.  After the officers ordered West to get up, he was punched in the

stomach and brought to the shower area.  He was also head-butted by an officer

wearing a helmet which caused a lump to form on his forehead.

51.    Similarly, on the morning of November 6, SERT officers handcuffed Alexander

Stewart and brought him out of his cell in C-3 to the shower area, where they

strip-searched him.  He was then brought to the multi-purpose room and placed in

the BOSS chair.  The officer said, "you look tired."   Stewart replied, "yes, its

4:30 in the morning."   The officer then sprayed mace in his eyes.  Then he was

taken from the chair and thrown against the wall.

52.    After his beating the next morning, Smith asked the housing officer in A-1 for a

medical slip and a grievance form.  He did not receive either form.  When the

next shift came on, he repeated his requests to that housing officer.  Again he

received neither form.  He did not make another request for a grievance because

he knew he would not receive one at OCJ.

53.    After his beating, West too asked his housing officer the next day for a grievance

form.  That officer said that he "would talk to a sergeant" about West's request.

West never heard anything more about it and never received his grievance.

11

54.   Stewart also repeatedly asked for grievance forms from various officers in the days following his beating.  He never received the forms and was never able to file a grievance.

55.   Defendant Rivera participated in or observed and failed to prevent the beating inflicted upon Smith.  The additional unnamed corrections officers, John Does I - XX, who beat or otherwise physically abused  Smith, West and Stewart are currently unknown to plaintiffs, but will be identified when such information becomes available.

56.   Each plaintiff has suffered conscious pain and suffering, physical and psychological harm as well as humiliation and embarrassment as a result of the unprovoked and excessive uses of force and brutality described herein.

## CAUSES OF ACTION

57.   Plaintiffs incorporate ¶¶ 1-56 as if fully re-stated herein.

58.   By maliciously and sadistically subjecting plaintiffs to excessive force and physical abuse, the individual defendants violated the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as made actionable by and through 42 U.S.C. § 1983.

59.   In violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as made actionable by and through 42 U.S.C. § 1983, defendant County of Orange maintained a policy or custom of utilizing the OCJ SERT team to inflict excessive force on inmates at the Jail which was a proximate cause of plaintiffs' injuries.

12

60.     By failing to train and/or supervise its corrections personnel in the appropriate use

of physical force and/or by its policy and practice of condoning and covering-up

excessive force incidents, defendant County of Orange violated the Fourth, Eighth

and Fourteenth Amendments to the United States Constitution, as made

actionable by and through 42 U.S.C. § 1983.

**PRAYER FOR RELIEF**

Plaintiffs respectfully pray that this Honorable Court:

a.  accept jurisdiction over this matter;

b.  empanel a jury to fairly hear and decide this case;

c.  award plaintiffs compensatory damages to redress their substantial pain and suffering;

d.  award plaintiffs punitive damages against the individual defendants;

e.  award plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. §

1988; and

f.  award plaintiffs such other relief deemed just and proper.


Dated: June 30, 2004
Chester, New York

Yours, etc.,

S/_____
SCOTT A. THORNTON(ST-8220)

THORNTON, BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918

(845) 469-1277

Counsel for plaintiffs

13

14